UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENCOMPASS HOLDINGS, INC.,

    Plaintiff,

    v.

CAREY F. DALY II, et al.,

    Defendants.

_____/

No. C 09-1816 PJH

**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER; AND GRANTING REQUEST FOR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Before the court is the application for a temporary restraining order ("TRO") and request for an order to show cause re preliminary injunction filed in the above-entitled action by plaintiff Encompass Holdings, Inc ("Encompass"). Having read the papers filed by Encompass, and carefully considered its arguments that the relevant legal authority, and good cause appearing, the court DENIES the application for the TRO, and GRANTS the request for an order to show cause why the court should not enter a preliminary injunction.

**BACKGROUND**

The present case was brought by Encompass against two individuals, Carey F. Daly II ("Daly"), and Randall J. Lanham ("Lanham"). Jurisdiction is based on 28 U.S.C. § 1332, as Encompass is a Nevada corporation, and Daly and Lanham are alleged to be citizens of California. Empress is seeking damages and declaratory and injunctive relief.

The following background facts are taken primarily from the complaint and documents attached as exhibits to the complaint. In December 2007, Encompass entered into an agreement entitled "Agreement by Parties to Perform Certain Actions in Return for Promises to Perform by Other Parties" ("the Initial Agreement") with Nacio, J. Scott Webber ("Webber"), Larry J. Cooper ("Cooper"), Murray Goldenberg ("Goldenberg"), Leslie Handler

("Handler"), and defendant Daly.[1]  See Complaint, Exh. 1.

The Initial Agreement provided that Encompass, which then held 100% of Nacio's 1000 issued shares ("the Shares"), would surrender the Shares to Nacio in order to facilitate a cash infusion into Nacio, and in exchange for new shares of Nacio at such time as Nacio shares became publicly traded, or Nacio was "vended" into a publicly-traded company.  Nacio agreed to convert the Shares at the appropriate time, and to drop any claims it might have against any other parties to the agreement.  Webber, Goldenberg, and Handler agreed to vote positively for the sale of Nacio.

Pursuant to the Initial Agreement, the Shares were to be held in trust in the escrow account of defendant Lanham, pending the conversion of those shares into new shares for Encompass, and pending the performance of all obligations set forth in the Initial Agreement and (according to Encompass) the drafting of a more definite agreement ("the Second Agreement") regarding the distribution of publicly-traded Nacio shares or the "vending" of Nacio into a publicly-traded company.[2]

In addition, Webber, Goldenberg, and Handler agreed to vote in Daly and Lanham as two new directors of Nacio, and Goldenberg agreed to resign from his position on the board.  Daly agreed to withdraw his pending legal action against Encompass and Webber.

On December 21, 2007, Daly sent an e-mail to Nacio employees, attorneys, and agents, stating that Nacio "has been separated from Encompass Holdings, Inc. (effective December 14, 2007) and is now operating under new ownership."  See Complaint, Exh. 2. The e-mail also stated that Goldenberg was  retiring as Chief Financial Officer; that Daly would be immediately assuming the positions of Chairman of the Board, President, and Chief Financial Officer, and that Lanham ("one of my dearest friends, who happens to be a

---

[1] Goldenberg was formerly the Chief Financial Officer of Encompass.  It appears that Webber, Cooper, and possibly Handler were on the board of Encompass.

[2] As to this last point, however, the Initial Agreement says nothing about a subsequent Second Agreement.  Moreover, it contains an integration clause providing, "This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or otherwise."

2

transaction attorney") would be assuming the roles of Corporate Secretary and Treasurer.

On January 18, 2008, Nacio filed for bankruptcy protection under Chapter 11, in the U.S. Bankruptcy Court for the Northern District of California, at Santa Rosa. See Complaint, Exhs. 4-6. Encompass asserts that the Bankruptcy Judge has ruled that the present action is not stayed by the automatic stay of 11 U.S.C. § 361, and that the relief Encompass seeks must be sought in an alternative forum.

In the bankruptcy filing, Daly (who signed for Nacio) states that he has the authority to file the petition; that he and Lanham are the sole directors of Nacio, with the ability to direct Nacio's actions; and the he and Lanham each own 50% of Nacio's shares.

In Schedule G of the Schedule of Assets and Liabilities, filed in the bankruptcy case, Nacio indicates that an executory contract (a "shareholder escrow agreement") exists between Nacio and Encompass, Cooper, Daly, Goldenberg, Handler, and Webber. See Complaint, Exh. 7.

In Nacio's Statement of Financial Affairs, filed in the bankruptcy case on February 4, 2008, and signed by Daly, Daly asserts that he and Lanham each hold 50% of Nacio's shares, although he acknowledges that the shares are held "subject to escrow agreement." See Complaint, Exh. 8.

On March 14, 2008, Daly was deposed in connection with the bankruptcy case. See Complaint, Exh. 9. In his deposition, Daly effectively acknowledged that the condition in the Initial Agreement that the Nacio shares become publicly traded before being released was never satisfied; that he did not become a shareholder of Nacio pursuant to the Initial Agreement; that even if the transaction contemplated by the Initial Agreement was consummated, he would own less than 50% of Nacio's equity; and that a further more definite agreement had to be reached among the parties regarding stock distribution rights. See Complaint, Exh. 8, at 9-10, 27-31, 65, and 73.

On May 16, 2008, Nacio filed its Plan of Reorganization, in which it claimed that the Plan would be funded by a new capital investment from Gallant Investment Group. According to Encompass, this claim turned out to be false.

On July 1, 2008, Daly issued a press release on behalf of Nacio, stating that Nacio was "pleased to announce it has become an independent company, effective immediately, under new ownership and management headed by Chairman, President, and CEO Carey Daly." See Complaint, Exh. 3.

On February 18, 2009, Nacio filed its Second Amended Disclosure Statement and Second Amended Plan ("SAP"). The SAP contemplates a sale of Nacio's assets to N2 Holdings, Inc. ("N2"), a new company formed by Daly and Lanham, which sale would, in effect, result in (a) no distribution of cash or new shares, let alone publicly-traded shares, being made to Encompass as contemplated by the Initial Agreement, and likely (b) the extinguishment of Encompass' Shares, and which would also (c) leave Daly in control of Nacio after the confirmation of SAP to liquidate Nacio's litigation and other claims to collect Nacio's accounts receivable. On April 8, 2009, the Bankruptcy Court entered an order approving the Second Amended Disclosure Statement.

Thus, Encompass asserts, the Second Amended Disclosure Statement and the SAP will be sent to creditors and the contemplated SAP may be confirmed. However, Encompass opposes the SAP and the contemplated sale to N2 and wishes to withdraw the Second Amended Disclosure Statement and the SAP to see whether Nacio can be rehabilitated. If not, Encompass states that it will seek to sell Nacio to the highest bidder (which might be Encompass) for the benefit of Nacio's creditors.

Encompass claims that Nacio was "the accounting arm" of Encompass, and continues to hold financial information that Encompass needs to prepare its 10-Q and 10-K reports, from the third quarter of the fiscal year, to the most recent fiscal quarter. However, according to Encompass, despite Encompass' requests and the promises made by Nacio to the Bankruptcy Court, Daly has refused to provide the necessary financial information to Encompass. Thus, Encompass is delinquent in its SEC filings, which has caused the SEC to remove Encompass' stock quotation from the OTC Bulletin Board, and which has also prevented Encompass from utilizing S-8 registration procedures – an impediment to the running of its business.

Encompass also asserts that a trial in some case, which it identifies only as "the lien litigation" is set to begin on April 29, 2009. The lien litigation apparently involves various secured creditors of Nacio – Nacio Investment Group, Inc., and NIR Group, LLC.

In the present action, Encompass asserts six causes of action:

(1) a claim of breach of contract, against Daly, alleging that Daly and/or Nacio breached the Initial Agreement because Daly never obtained additional funding for Nacio; Nacio's shares never became publicly traded; Nacio was never "vended" into a publicly-traded company; and the parties never agreed on terms for the Second Agreement; and also alleging that Daly and/or Nacio breached the Initial Agreement by proposing Nacio's SAP, which contemplates a sale of Nacio's holdings to N2, a new company formed by Daly and Lanham, and which would result in no distribution of cash or new shares being made to Encompass as contemplated by the Initial Agreement;

(2) a claim of breach of the implied covenant of good faith and fair dealing, against Daly, alleging that Daly knowingly breached the Initial Agreement; claimed that he owned the Shares; claimed that he had the authority to vote the Shares; filed the bankruptcy petition; filed Nacio's Second Amended Plan, which contemplates a sale of Nacio's assets to N2, and which would result in no distributions of cash or new shares;

(3) a claim of conversion, against Daly and Lanham, alleging that neither has a right to continue to exercise dominion over the Shares, that Encompass has the right to exercise dominion over the Shares; that Encompass has voted the shares to remove Daly and Lanham as directors and/or officers of Nacio, and to replace Daly and Lanham; that Daly and Lanham have refused to recognize Encompass' rightful exercise of its shareholder rights; and that Encompass has demanded that Daly and Lanham relinquish control over Nacio's assets, and that Daly and Lanham have refused;

(4) a claim of negligence and constructive fraud, against Daly and Lanham, alleging that Lanham acted as the attorney for Nacio in negotiating the Initial Agreement, and also acted as counsel for "investors" in Nacio, and for Daly; that Lanham was the escrow agent for the Shares under the Initial Agreement; that as escrow agent,

Lanham had a fiduciary duty to all parties to the Initial Agreement, and a special relationship with all such parties; that Encompass justifiably relied on Lanham's ability to act as escrow agent for the Shares; that Lanham had a conflict of interest as a result of purportedly becoming a director pursuant to the Initial Agreement; that Lanham breached his duty to Encompass by engaging in the acts described in the first cause of action;

   (5) a claim for declaratory relief, against Daly and Lanham, seeking a judicial declaration that Encompass is the rightful owner of, and has the authority to vote, the Shares, to remove Daly and Lanham as purported members of Nacio's board, and to name new members of the Nacio board; and

   (6) a claim for injunctive relief, against Daly and Lanham, seeking a TRO and a preliminary and permanent injunction, finding that Encompass is the rightful owner of, and has the authority to vote, the Shares to, among other things, remove Daly and Lanham as purported members of Nacio's board, and to name new members of the Nacio board.

   Encompass now seeks a temporary restraining order (TRO) and an order to show cause re preliminary injunction. In its proposed order, Encompass seeks a TRO requiring "Daly, Lanham, or any other person in possession of the Shares that is served with this order" to "immediately turnover [sic] the Shares to Encompass; finding that "Encompass is the owner of the Shares of Nacio;" finding that "Encompass has rightfully exercised its authority to vote the Shares of Nacio and (i) removed Daly and Lanham as purported members of Nacio's Board of Directors, and (ii) named new members of Nacio's Board of Directors;" and finding that "Daly and Lanham are prohibited from acting or purporting to act on behalf of Nacio."

## DISCUSSION

A. Legal Standard

   A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008); see also

6

Munaf v. Geren, 128 S.Ct. 2207, 2218-19 (2008).

Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977); Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

B.   Encompass' Application for a TRO

Encompass argues that "[t]ime is of the essence to prevent great harm" and urges the court to "end Daly and Lanham's abuse of purported . . . authority to control Nacio to the detriment of Encompass, Nacio and its creditors."

Encompass claims that in addition to refusing to provide the information Encompass needs to complete its public filings with the SEC, Daly and/or Lanham have also increased Daly's monthly compensation from $7,500 to $20,000 (thereby causing harm to Nacio and wasting its corporate assets); discouraged Nacio sales in an effort to depress the value of Nacio's assets so they can be purchased for less than their fair market value; and attempted to improperly liquidate Nacio's assets without first obtaining the required authority from the Bankruptcy Judge.

Encompass asserts that all the necessary elements weigh in favor of granting the requested relief. Encompass addresses probability of success on the merits, possibility of irreparable harm, existence of serious questions going to the merits, and the balance of hardships.

First, Encompass contends that it has shown that it has a high probability of success on the merits on the claims for breach of contract, conversion, and declaratory relief. As for the breach of contract claim, Encompass repeats the allegations in the first cause of action, asserting that it performed all obligations required of it, and that Nacio and/or Daly breached the Initial Agreement by failing to obtain additional funding for Nacio, by failing to cause Nacio's shares to become publicly traded, by failing to "vend" Nacio into a publicly traded company, and by failing to arrive at terms for a Second Agreement; and that Nacio and/or Daly further breached the Initial Agreement by proposing Nacio's SAP.

7

As for the conversion claim, Encompass again simply repeats the allegations in the complaint – that neither Daly nor Lanham have a right to continue exercising dominion over the Shares, and that Encompass has the right to possess and exercise control and dominion over the Shares.

With regard to the claim for declaratory relief, Encompass contends that it has established that it is entitled to a judicial declaration that it is the rightful owner of and has the authority to vote the Shares, and that it is entitled to remove Daly and Lanham as members of Nacio's board, and to replace them with its own candidates.

Second, Encompass asserts that it has established a probability of irreparable injury if the requested relief is not granted. Encompass argues that "due to the advanced stage of the [b]ankruptcy [c]ase, without immediate relief from this Court, Daly is likely to confirm a plan of reorganization where N2, a company owned and controlled by Daly and Lanham, will be the buyer of Nacio's assets."

In effect, Encompass argues, Daly and Lanham will have stolen the Nacio Shares from Encompass and sold them to themselves for a pittance. Encompass argues that "[t]his is completely unjust and a cause of immediate irreparable harm to both Encompass and Nacio's creditors." According to Encompass, "Daly and Lanham are clearly not to be trusted and should not be allowed to control Nacio."

Encompass asserts that it is suffering immediate irreparable damage in the form of the continued waste of Nacio's corporate assets, which Encompass claims are its corporate assets; the continued harm to Encompass' corporate assets; the continued inability of Encompass to exercise its rightful control over Nacio, "Encompass' wholly-owned subsidiary;" and the inability of Encompass to come current with the SEC for the default quarters, and the ramifications of the default.

Encompass is also "very concerned that Daly will attempt to dissipate Nacio's assets immediately" in response to "Encompass' efforts to regain control of its subsidiary." Encompass speculates that Daly might cause further irreparable harm by causing a data loss by cutting power to Nacio's computer hardware or erasing it, or by otherwise making

8

data unavailable to customers.

Third, as for the existence of serious questions going to the merits, Encompass simply refers generally to its arguments regarding irreparable harm, set forth above.

Fourth, as for the balance of hardships, Encompass argues that it is suffering hardships because its SEC filings are in default; because it is being prevented from controlling its wholly-owned subsidiary, particularly with regard to the SAP proposed in the Bankruptcy Court (which Encompass opposes).

Encompass contends that Daly and Lanham will likely suffer no hardships if the requested relief is granted, as Daly will simply be returned to the position he was in before the Initial Agreement.  Any claim by Daly that he will be harmed by losing his salary and position is, in Encompass' view, without merit, because "[t]he continued employment of Daly and the payment of his salary are contrary to the wishes of Encompass, which should undoubtably be allowed to decide who is employed by Nacio and how much Nacio's employees are paid."

Also, any claim that Daly might make with regard to certain loans he made to Nacio is also, in Encompass' view, without merit, as Encompass believes that Nacio and Daly were never authorized to obtain or make such loans.  Encompass asserts that Daly is just a "bad actor," who should be immediately removed from Nacio's board.

Finally, Encompass argues that there "appears" to be no hardship to Lanham, as "[h]e will merely be prevented from controlling a proposed usurpation of Encompass' corporate assets via a sale of Nacio's assets to N2, an entity controlled by Lanham."

The court finds that the application for the TRO must be DENIED.  As an initial matter, Encompass has not applied the standard set forth by the Supreme Court in Winter, and therefore has not met its burden as the party seeking injunctive relief.

In addition, Encompass is improperly seeking to obtain, by means of a TRO, a substantial portion of the ultimate relief it seeks in the case.  The sole purpose of a TRO is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction.  Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck

Drivers, 415 U.S. 423, 439 (1974). "Status quo" means the last uncontested status that preceded the pending controversy. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000).

Here, however, Encompass is not attempting to preserve the status quo pending a determination on the merits. Rather, Encompass is seeking a mandatory injunction that would alter the status quo by requiring Daly and Lanham, and whoever else has access to the Shares, to turn the Shares over to Encompass; and a judicial declaration that Encompass' attempt to eject Daly and Lanham from the Nacio board should be given immediate effect. In other words, Encompass seeks an order granting the ultimate relief it seeks in this action, with the exception of the damages.

## CONCLUSION

In accordance with the foregoing, Encompass' application for a temporary restraining order is DENIED. No later than two calendar days following the filing of the proof of service of the summons and complaint in this action, Encompass shall serve defendants with a copy of this order. No later than 14 calendar days following receipt of this order, defendants shall file an opposition to the motion for preliminary injunction. Any reply to the opposition shall be filed no later than seven days following the filing of defendants' opposition. The court will advise the parties as to the date and time of any hearing.

**IT IS SO ORDERED.**

Dated: April 30, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge