United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENCOMPASS HOLDINGS INC.,

    Plaintiff,

    v.

CAREY F. DALY II, et al.,

    Defendants.

_____/

No. C 09-1816 PJH

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Before the court is plaintiff's motion for a preliminary injunction. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion.

## BACKGROUND

In December 2007, plaintiff Encompass Holdings, Inc. entered into an agreement entitled "Agreement by Parties to Perform Certain Actions in Return for Promises to Perform by Other Parties" (referred to as "the Initial Agreement") with Nacio Systems, Inc. ("Nacio"), J. Scott Webber ("Webber"), Larry J. Cooper ("Cooper"), Murray Goldenberg ("Goldenberg"), Leslie Handler ("Handler"), and defendant Carey F. Daly, II ("Daly").[1]

The Initial Agreement provided that Encompass, which then held 100% of Nacio's 1000 issued shares ("the Shares"), would surrender the Shares to Nacio in order to

---

[1] Goldenberg was formerly the Chief Financial Officer of Encompass. It appears that Webber, Cooper, and possibly Handler were members of Encompass' board of directors.

facilitate a cash infusion into Nacio, and in exchange for new shares at such time as Nacio shares became publicly traded, or Nacio was "vended" into a publicly-traded company.

Pursuant to the Initial Agreement, the Shares were to be held in trust in the escrow account of defendant Randall J. Lanham ("Lanham"), pending the conversion of those shares into new shares for Encompass, and pending the performance of all obligations set forth in the Initial Agreement.

Encompass claims (though this claim does not appear to be supported by the Initial Agreement) that the Shares were also to be held in trust under the Initial Agreement pending the drafting of a more definite agreement (referred to as "the Second Agreement") regarding the distribution of publicly-traded Nacio shares or the "vending" of Nacio into a publicly-traded company.

In addition, Encompass asserts, Webber, Goldenberg, and Handler agreed to vote in Daly and Lanham as two new directors of Nacio; Goldenberg agreed to resign from his position on the board; and Daly agreed to withdraw his pending legal action against Encompass and Webber.

On December 21, 2007, Daly sent an e-mail to Nacio employees, attorneys, and agents, stating that Nacio "has been separated from Encompass Holdings, Inc. (effective December 14, 2007) and is now operating under new ownership." The e-mail also stated that Goldenberg was retiring as Chief Financial Officer; that Daly would be immediately assuming the positions of Chairman of the Board, President, and Chief Financial Officer, and that Lanham would be assuming the roles of Corporate Secretary and Treasurer.

On January 18, 2008, Nacio filed for bankruptcy protection under Chapter 11, in the United States Bankruptcy Court for the Northern District of California. Encompass asserts that the Bankruptcy Judge has ruled that the present action is not stayed by the automatic stay of 11 U.S.C. § 361, and that the relief Encompass seeks must be sought in an alternative forum.

In the bankruptcy filing, Daly (who signed for Nacio) states that he has the authority to file the petition; that he and Lanham are the sole directors of Nacio, with the ability to

direct Nacio's actions; and the he and Lanham each own 50% of Nacio's shares. Schedule G of the Schedule of Assets and Liabilities indicates that an executory contract (a "shareholder escrow agreement") exists between Nacio and Encompass, Cooper, Daly, Goldenberg, Handler, and Webber.

In Nacio's Statement of Financial Affairs, filed in the bankruptcy case on February 4, 2008, and signed by Daly, Daly asserts that he and Lanham each hold 50% of Nacio's shares, although he acknowledges that the shares are held "subject to escrow agreement."

On May 16, 2008, Nacio filed its Plan of Reorganization, in which it claimed that the Plan would be funded by a new capital investment from Gallant Investment Group. According to Encompass, this claim turned out to be false.

On July 1, 2008, Daly issued a press release on behalf of Nacio, stating that Nacio was "pleased to announce it has become an independent company, effective immediately, under new ownership and management headed by Chairman, President, and CEO Carey Daly."

On February 18, 2009, Nacio filed its Second Amended Disclosure Statement and Second Amended Plan ("SAP"). The SAP contemplates a sale of Nacio's assets to N2 Holdings, Inc. ("N2"), a new company formed by Daly and Lanham. Encompass asserts that this sale would, in effect, result in (a) no distribution of cash or new shares, let alone publicly-traded shares, being made to Encompass as contemplated by the Initial Agreement, and likely (b) the extinguishment of Encompass' Shares, and which would also (c) leave Daly in control of Nacio after the confirmation of SAP to liquidate Nacio's litigation and other claims to collect Nacio's accounts receivable. On April 8, 2009, the Bankruptcy Court entered an order approving the Second Amended Disclosure Statement.

Encompass contends that the Second Amended Disclosure Statement and the SAP will be sent to creditors and the contemplated SAP may be confirmed. However, Encompass opposes the SAP and the contemplated sale to N2 and wishes to withdraw the Second Amended Disclosure Statement and the SAP, in order that a determination can be made whether Nacio can be rehabilitated, or whether it should be sold to the highest bidder

for the benefit of its creditors.

Encompass claims that Nacio holds financial information that Encompass needs to prepare its 10-Q and 10-K reports. However, according to Encompass, Daly has refused to provide the necessary financial information. Thus, Encompass asserts, it is delinquent in its SEC filings, and the SEC has removed Encompass' stock quotation from the OTC Bulletin Board. Encompass claims that it has also been prevented from utilizing S-8 registration procedures.

Encompass filed the present action on April 24, 2009 against Daly and Lanham, seeking damages and injunctive and declaratory relief. Encompass asserts six causes of action:

(1) a claim of breach of contract, against Daly, alleging that Daly and/or Nacio breached the Initial Agreement because Daly never obtained additional funding for Nacio; Nacio's shares never became publicly traded; Nacio was never "vended" into a publicly-traded company; and the parties never agreed on terms for the Second Agreement; and also alleging that Daly and/or Nacio breached the Initial Agreement by proposing Nacio's SAP, which contemplates a sale of Nacio's holdings to N2, a new company formed by Daly and Lanham, and which would result in no distribution of cash or new shares being made to Encompass as contemplated by the Initial Agreement;

(2) a claim of breach of the implied covenant of good faith and fair dealing, against Daly, alleging that Daly knowingly breached the Initial Agreement; claimed that he owned the Shares; claimed that he had the authority to vote the Shares; filed the bankruptcy petition; filed Nacio's Second Amended Plan, which contemplates a sale of Nacio's assets to N2, and which would result in no distributions of cash or new shares;

(3) a claim of conversion, against Daly and Lanham, alleging that neither has a right to continue to exercise dominion over the Shares, that Encompass has the right to exercise dominion over the Shares; that Encompass has voted the shares to remove Daly and Lanham as directors and/or officers of Nacio, and to replace Daly and Lanham; that Daly and Lanham have refused to recognize Encompass' rightful exercise of its

4

shareholder rights; and that Encompass has demanded that Daly and Lanham relinquish control over Nacio's assets, and that Daly and Lanham have refused;

  (4) a claim of negligence and constructive fraud, against Daly and Lanham, alleging that Lanham acted as the attorney for Nacio in negotiating the Initial Agreement, and also acted as counsel for "investors" in Nacio, and for Daly; that Lanham was the escrow agent for the Shares under the Initial Agreement; that as escrow agent, Lanham had a fiduciary duty to all parties to the Initial Agreement, and a special relationship with all such parties; that Encompass justifiably relied on Lanham's ability to act as escrow agent for the Shares; that Lanham had a conflict of interest as a result of purportedly becoming a director pursuant to the Initial Agreement; that Lanham breached his duty to Encompass by engaging in the acts described in the first cause of action;

  (5) a claim for declaratory relief, against Daly and Lanham, seeking a judicial declaration that Encompass is the rightful owner of, and has the authority to vote, the Shares, to remove Daly and Lanham as purported members of Nacio's board, and to name new members of the Nacio board; and

  (6) a claim for injunctive relief, against Daly and Lanham, seeking a TRO and a preliminary and permanent injunction, finding that Encompass is the rightful owner of, and has the authority to vote, the Shares to, among other things, remove Daly and Lanham as purported members of Nacio's board, and to name new members of the Nacio board.

With the complaint, Encompass filed an application for a temporary restraining order (TRO) and an order to show cause re preliminary injunction. The proposed order submitted with the TRO application provided that "Daly, Lanham, or any other person in possession of the Shares that is served with this order" would be required to "immediately turnover [sic] the Shares" to Encompass.

Encompass also requested findings that "Encompass is the owner of the Shares of Nacio;" that "Encompass has rightfully exercised its authority to vote the Shares of Nacio and (i) removed Daly and Lanham as purported members of Nacio's Board of Directors, and (ii) named new members of Nacio's Board of Directors;" and that "Daly and Lanham

5

are prohibited from acting or purporting to act on behalf of Nacio."

On April 30, 2009, the court denied the application for the TRO. As an initial matter, the court noted that Encompass had not applied the standard set forth by the Supreme Court in Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008) and therefore had not met its burden as the party seeking injunctive relief.

In addition, the court found that Encompass was improperly attempting to obtain, by means of a TRO, a substantial portion of the ultimate relief it was seeking in the case. The court noted that the sole purpose of a TRO is to preserve the status quo pending hearing on the moving party's application for a preliminary injunction, and that "status quo" means the last uncontested status that preceded the pending controversy.

The court found that Encompass was not attempting to preserve the status quo pending a determination on the merits, but rather was seeking, first, a mandatory injunction that would alter the status quo by requiring Daly and Lanham, and whoever else had access to the Shares, to turn the Shares over to Encompass; and second, a judicial declaration that Encompass' attempt to eject Daly and Lanham from the Nacio board should be given immediate effect. In other words, Encompass was seeking an order granting the ultimate relief it was seeking in this action, with the exception of the damages.

Encompass now seeks a preliminary injunction. Although Encompass did not submit a separate proposed order, the court interprets the request as seeking the same relief sought in the previous application for the TRO.

**DISCUSSION**

A.  Legal Standard

A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right. Munaf v. Geren, 128 S.Ct. 2207, 2219 (2008). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008);

6

B.     Encompass' Motion for Preliminary Injunction

In support of the motion, Encompass contends that it has shown that it has a high probability of success on the merits on the claims for breach of contract, conversion, and declaratory relief.

With regard to the breach of contract claim, Encompass asserts that it performed all obligations required of it, and that Nacio and/or Daly breached the Initial Agreement by failing to obtain additional funding for Nacio, by failing to cause Nacio's shares to become publicly traded, by failing to "vend" Nacio into a publicly traded company, and by failing to arrive at terms for a Second Agreement; and that Nacio and/or Daly further breached the Initial Agreement by proposing Nacio's SAP.

With regard to the conversion claim, Encompass argues that neither Daly nor Lanham have a right to continue exercising dominion over the Shares, and that Encompass has the right to possess and exercise control and dominion over the Shares.

With regard to the claim for declaratory relief, Encompass contends that it has established that it is entitled to a judicial declaration that it is the rightful owner of and has the authority to vote the Shares, and that it is entitled to remove Daly and Lanham as members of Nacio's board, and to replace them with its own candidates.

Encompass also asserts that it has established a probability of irreparable injury if the requested relief is not granted. Encompass contends that it is presently suffering immediate irreparable damage in the form of the continued waste of Nacio's corporate assets, which Encompass claims are its corporate assets; the continued harm to Encompass' corporate assets; the continued inability of Encompass to exercise its rightful control over Nacio; and the inability of Encompass to come current with the SEC for the default quarters, and the ramifications of the default.

Encompass is also "very concerned that Daly will attempt to dissipate Nacio's assets immediately" in response to "Encompass' efforts to regain control of its subsidiary." Encompass speculates that Daly might cause further irreparable harm by causing a data loss by cutting power to Nacio's computer hardware or erasing it, or by otherwise making

data unavailable to customers.

Third, as for the existence of serious questions going to the merits, Encompass simply refers generally to its arguments regarding irreparable harm, set forth above.

Fourth, as for the balance of hardships, Encompass argues that it is suffering hardships because its SEC filings are in default; because it is being prevented from controlling its wholly-owned subsidiary, particularly with regard to the SAP proposed in the Bankruptcy Court (which Encompass opposes). Encompass contends that Daly and Lanham will likely suffer no hardships if the requested relief is granted, as Daly will simply be returned to the position he was in before the Initial Agreement, and Lanham "will merely be prevented from controlling a proposed usurpation of Encompass' corporate assets via a sale of Nacio's assets to N2, an entity controlled by Lanham."

Daly and Lanham make five main arguments in opposition. First, they contend that Encompass has presented no evidence that harm has been threatened; and that Encompass' assertions in general amount to mere speculation.

Second, they contend that Encompass has an adequate remedy at law (damages), and has presented no evidence that it would be unable to collect damages were it to prevail in the case.

Third, Daly and Lanham argue that inequitable conduct on the part of Encompass and its agents precludes the relief it seeks. They contend that Encompass and others who entered into the Initial Agreement concealed the fact that Encompass had encumbered all of the assets of Nacio by pledging those assets to NIR, Encompass' main funding source. Daly and Lanham also claim that the stock certificates given by Encompass to Lanham to put into trust bore no legend to alert anyone to that fact (the encumbrance of Nacio's assets). They assert the law requires equitable conduct of a person seeking equitable relief, and that here, Encompass does not come to the table with clean hands.

Daly and Lanham's fourth argument is that Encompass is not likely to prevail on the merits. They claim that the Initial Agreement is an executory contract, and that under bankruptcy law, the debtor, Nacio, has the right to assume or reject the contract (citing 11

U.S.C. § 365). They claim that until Nacio rejects the contract, which it has not yet done (although it intends to do so), its rights are preserved.

Moreover, Daly and Lanham assert, Encompass has no right to vote the Shares held in trust. They contend that because the Initial Agreement provides that Encompass "will surrender all shares of ownership of Nacio and surrender any claim to control of Nacio" to the Escrow account of Lanham's law firm, Encompass has relinquished its right to vote the shares, until such time as the shares are removed from the trust.

Daly and Lanham's fifth argument is that granting the motion would impose great hardships on defendants. They claim that the danger of putting Encompass in control of Nacio is that Nacio's going-concern value will be destroyed.

In reply, Encompass reiterates that all "applicable elements" – probability of success on the merits, possibility of irreparable injury, existence of serious questions going to the merits, and balance of hardships – weigh in favor of granting the preliminary injunction.

With regard to likelihood of success on the merits, Encompass in its reply addresses only the breach of contract claim. Encompass argues that it has a likelihood of success on that claim because the evidence shows that there was an anticipatory breach and/or repudiation of the Initial Agreement. Encompass contends that Nacio and/or Daly breached the Initial Agreement because Daly never obtained additional funding for Nacio, because Nacio's shares never became publicly traded, because Nacio was never "vended" into a publicly traded company, and because the parties never reached terms as to a Second Agreement.

In addition, Encompass asserts that Daly and/or Nacio have repudiated the Initial Agreement by proposing Nacio's SAP, which contemplates a sale of Nacio's assets to N2 and in effect would result in no distribution of cash or new shares being made to Encompass as contemplated by the Initial Agreement, and likely the extinguishment of the Shares. This is followed by a rambling discussion that I do not understand (reply at 7-9).

With regard to the "possibility of irreparable injury," Encompass argues that at the time the present motion was filed, it was incurring irreparable injury in the form of "the

continued inability of Encompass to exercise its rightful control of Nacio, Encompass' wholly owned subsidiary." Encompass asserts that "[t]his harm is still ongoing. Encompass argues further that at the time the motion was filed, it "faced the possibility of additional irreparable harm in the form of the proposed sale of Nacio's assets to N2, an entity owed and controlled by the [d]efendants," and the "extinguishment of its Shares in return for no value pursuant to the terms of the SAP."

With regard to the "balance of hardships," Encompass claims that it "is suffering a number of hardships, because it cannot come current on its reporting obligations to the SEC for the Default Quarters." Moreover, it "is being prohibited from controlling the destiny of its wholly owned subsidiary." Encompass claims that the terms of the SAP proposed by Nacio, which is "now moving on a confirmation track in the Bankruptcy Court, is contrary to Encompass' wishes," because the SAP contemplates a sale to N2, a company owned and operated by Daly and Lanham, and also will likely result in Encompass receiving nothing and having its Shares cancelled, which Encompass asserts is "wholly contrary to what was envisioned by the Initial Agreement."

According to Encompass, the proposed SAP would only "further Daly and Lanham's efforts to hijack Nacio and its assets for their own personal gain." Encompass "would prefer to withdraw the SAP to see if Nacio can be rehabilitated for the benefit of Nacio's creditors and, therefore, Encompass."

The court finds that the motion must be DENIED. As an initial matter, the court notes that despite being advised of the correct legal standard in the previous order denying the application for the TRO, Encompass nevertheless has proceeded to seek relief under the former standard, as set forth by the Ninth Circuit in decisions dating back 20 or more years.

Under the Supreme Court's recent decision in Winter, a plaintiff seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. Id., 129 S.Ct. at 374. Under

the standard cited by Encompass, a party is entitled to preliminary injunctive relief if it demonstrates either a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted, or the existence of serious questions going to the merits and that the balance of hardships tips in its favor.  See e.g, Hoopa Valley Tribe v. Christie, 812 F.2d 1097, 1102 (9th Cir. 1987).

Nevertheless, under either standard, Encompass has not met its burden of showing that preliminary injunctive relief is warranted.  First, with regard to likelihood of success on the breach of contract claim – the only one of the substantive claims that Encompass addresses in its reply brief – the evidence is inconclusive.  Given the factual disputes raised by the parties, it is impossible for the court to determine whether Encompass is or is not likely to prevail on this claim.

Second, with regard to the likelihood that Encompass will suffer irreparable harm in the absence of preliminary relief, Encompass has made no showing that the alleged harm is "irreparable" – that is, that in the absence of preliminary injunctive relief at this stage of the litigation, there will be no remedy possible should Encompass prevail on the breach of contract claim (or on any other claim).

Third, with regard to the equities, Encompass has not shown that the balance tips in its favor.  And finally, Encompass has made no showing as to the fourth factor – whether an injunction would be in the public interest.

## CONCLUSION

In accordance with the foregoing, the court DENIES the motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: June 3, 2009

PHYLLIS J. HAMILTON
United States District Judge

11