UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ENCOMPASS HOLDINGS, INC., | ) | |
| Plaintiff(s), | ) | No. C09-1816 BZ |
| v. | ) | |
| CAREY F. DALY II, et al., | ) | **ORDER GRANTING SUMMARY JUDGMENT** |
| Defendant(s). | ) | |
| | ) | |

Plaintiff Encompass Holdings, Inc. ("Plaintiff") filed this lawsuit against California residents Carey F. Daly ("Daly") and Randall J. Lanham ("Lanham") (collectively "Defendants") stemming from a failed business agreement concerning Nacio Systems, Inc. ("Nacio"), which was at one point Plaintiff's wholly owned subsidiary.

Defendants have now moved for summary judgment, or in the alternative, for partial summary judgment. After consideration of oral argument and the pleadings and relevant exhibits submitted by the parties, and for the reasons set forth below,

1

1    the court **GRANTS** the motion.[1]

2    <u>BACKGROUND</u>

3         In December 2007, Plaintiff entered into an agreement

4    entitled "Agreement by Parties to Perform Certain Actions in

5    Return for Promises to Perform by Other Parties" ("the December

6    Agreement")[2] with Nacio, J. Scott Webber ("Webber"), Larry J.

7    Cooper ("Cooper"), Murray Goldenberg ("Goldenberg"), Leslie

8    Handler, ("Handler"), and Daly.[3]

9         To the extent relevant here, the December Agreement

10   provided that Plaintiff, which then held 100% of Nacio's 1,000

11   issued shares ("the Shares"), would surrender the Nacio Shares

12   to Lanham in exchange for new shares of Nacio at such time as

13   Nacio shares became publicly traded, or Nacio was "vended" into

14   a publicly-traded company.[4]

15   _____

16        [1]    All parties have consented to my jurisdiction for all
     proceedings including entry of final judgment, pursuant to 28
17   U.S.C. § 636(c).

18        [2]    Plaintiff's complaint refers to this agreement as the
     "Initial Agreement."  Both parties, however, refer to the
19   agreement as the "December Agreement" and the court therefore
     adopts this term.
20
          [3]    The parties disagree on the reasons why the December
21   Agreement was executed, and the Agreement itself lacks a
     "purpose" section.  Defendants contend the purpose of the
22   Agreement was to "resolve management conflicts" within Nacio,
     and Plaintiff contends it was because Nacio was not
23   "synergistic with other Encompass operations."  (<u>See</u> Def.'s
     Obj. To Pl.'s Sep. Stat. of Facts, Docket No. 232, Fact No. 5.)
24
          [4]    Plaintiff submitted no objections to the evidence
25   submitted by Defendants.  Notably, almost all of Defendants'
     evidence was submitted by way of attachment to the declaration
26   of Chris Miller, counsel for Defendants, and many of those
     exhibits appear to lack proper authentication.  <u>See</u> <u>Orr v. Bank</u>
27   <u>of America, NT & SA</u>, 285 F.3d 764, 777 (9th Cir. 2002).
     Nevertheless, failure to object to inadmissible matters

28
                                       2

1     Pursuant to the December Agreement, the Shares were to be

2   held in trust in the escrow account of defendant Lanham, who

3   was not a party to the Agreement, pending the conversion of

4   those shares into new shares for Plaintiff and other parties to

5   the Agreement.[5]  Daly and Lanham were to be elected to be

6   directors of Nacio, which happened on December 18, 2007.

7   (Miller Decl., Exs. 12, 13; Undisputed Fact No. 16.)

8     On December 20, 2007, Robert Laskowski, the attorney for

9   Plaintiff, sent a letter to Lanham enclosing an unsigned

10  certificate for the Shares as well as the original statement of

11  ownership.  The letter states that the enclosed shares

12  "constitute the entire issued and outstanding shares of Nacio"

13  and also that the certificate "requires the signatures of the

14  new President and Secretary of Nacio."[6]  (Miller Decl., Ex.

15  15.)  That same day, Daly and Lanham elected Daly as President

16

17

18  _____

19  contained in an affidavit or declaration can waive the
    objection.  <u>FDIC v. New Hampshire Ins. Co.</u>, 953 F.2d 478, 485

20  (9th Cir. 1991).  Absent objection, the court may consider
    inadmissible evidence.  <u>Scharf v. United States Attorney</u>

21  <u>General</u>, 597 F.2d 1240, 1243 (9th Cir. 1979).  I have decided
    to consider the exhibits submitted by Defendants.

22    [5]  The parties dispute whether the December Agreement
    gave full operational authority and control of Nacio to Daly

23  and Lanham.  Both parties rely on the same language in the
    December Agreement to support their respective positions (<i>i.e.</i>,

24  that "Encompass ... will surrender all shares of ownership of
    Nacio and surrender any claim to control of Nacio, to the

25  escrow account of ... Lanham.") (<u>See</u> Def.'s Obj. To Pl.'s Sep.
    Stat. of Facts, Docket No. 232, Fact No. 8.)

26

27    [6]  Plaintiff notes that Defendants did not submit a
    signed copy of the certificate into evidence.  (Bonner Decl.

28  ¶ 4.)

1  and CEO of Nacio, and Lanham as Secretary and Treasurer.[7]

2  (Miller Decl., Ex. 19; Undisputed Fact No. 16.)

3       Shortly after the December Agreement was executed, Nacio

4  Investment Group LLC ("NIG"), a Nacio creditor, levied on

5  Nacio's bank account seizing approximately $100,000.00.

6  (Undisputed Fact No. 22.)[8]  On January 18, 2008, Nacio filed

7  for bankruptcy protection under Chapter 11, in the U.S.

8  Bankruptcy Court for the Northern District of California, at

9  Santa Rosa. (See Complaint, Exs. 4-6; Undisputed Fact No. 25.)[9]

10 Lanham and Daly signed the bankruptcy petition as the sole

11 directors of Nacio.  (Bonner Decl. ¶ 2, August 18, 2011

12 Deposition of Carey Daly ("Second Daly Dep.") 160:13-161:3.)

13      In April 2009, Plaintiff, acting as the sole shareholder

14 of Nacio, by way of a consent action, resolved to remove Daly

15 and Lanham as the directors of Nacio.  (Bonner Decl. ¶ 6.)

16 Plaintiff then authorized Webber (the CEO of Encompass

17 Holdings, Inc.) to act on behalf of Nacio and elect new

18

19      [7]   Plaintiff does not appear to dispute the fact that
   Daly and Lanham were elected to be directors of Nacio. (See
20 Def.'s Obj. to Pl.'s Sep. Stat. of Facts, Docket No. 232, Fact
   No. 12.)  Plaintiff asserts that Daly and Lanham were removed
21 as the acting directors of Nacio on April 1, 2009 when
   Plaintiff, as the sole shareholder of Nacio, voted to have Daly
22 and Lanham removed as directors.  (Id.)

23      [8]   The parties dispute whether Daly was aware of the NIG
   debt, and whether Daly had misrepresented to Lanham prior to
24 the December Agreement that the debt with NIG had been settled.
   Nonetheless, both parties appear to agree that the money was in
25 fact seized from Nacio's account.

26      [9]   Plaintiff asserts that the Bankruptcy Judge ruled
   that the present action is not stayed by the automatic stay of
27 11 U.S.C. § 361, and that the relief Plaintiff seeks must be
   sought in an alternative forum.
28

                                   4

1  directors, which he did.[10]  (Id. at Exs. 54, 56.)  On April 7,

2  2009, Plaintiff wrote Lanham and Daly, advising them that

3  Plaintiff had removed them as the directors of Nacio and

4  requesting that they "return Encompass' Shares of Nacio being

5  held in trust, recognize their removal as the directors of

6  Nacio ... cease exercising non-existing authority to control

7  Nacio ... vacate Nacio's facilities ... and turnover all keys

8  and access to Nacio's facilities ... ."  (Id. at Ex. 57.)

9       Plaintiff filed the present action on April 24, 2009

10 against Daly and Lanham, seeking damages and injunctive and

11 declaratory relief, and amended its complaint on January 25,

12 2010, asserting five claims for relief.

13 DISCUSSION

14      Defendants move for summary judgment on each of

15 Plaintiff's claims pursuant to Rule 56 of the Federal Rules of

16 Civil Procedure.

17 **1.  Legal Standards**

18      Summary judgment is appropriate "if the pleadings,

19 depositions, answers to interrogatories, and admissions on

20 file, together with the affidavits, if any, show that there is

21 no genuine issue as to any material fact and that the moving

22 party is entitled to judgment as a matter of law."  Fed. R.

23 Civ. P. 56(c).

24      A moving party without the ultimate burden of persuasion

25 at trial has both the initial burden of production and the

26 _____

27      [10]  It is undisputed that Webber took these various
   actions.  Whether Webber had the authority to take these

28 actions appears to be in dispute.

5

ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (citing 10A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 2727 (3rd ed. 1998)). In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)).  When, as here, the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  This showing can be made by "pointing out through argument -- the absence of evidence to support plaintiff's claim."  Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000).  However, a conclusory assertion that the opposing party has no evidence is insufficient- the moving party must identify the specific issue or issues on which it claims the opposing party has no supporting evidence, and demonstrate the absence of such evidence.  Fed. R. Civ. Proc. 56(c)(1)(B); Celotex, 477 U.S. at 326 ("It is not enough to move for summary judgment ... with a conclusory assertion that the [opposing party] has no evidence to prove his case.").

     If a moving party fails to carry its initial burden of

6

1  production, the nonmoving party has no obligation to produce

2  anything, even if the nonmoving party would have the ultimate

3  burden of persuasion at trial.  Nissan Fire, 210 F.3d at 1103).

4  If a moving party fails to carry its initial burden of

5  production, the nonmoving party may defeat the motion for

6  summary judgment without producing anything; however, if a

7  moving party carries its burden of production, the nonmoving

8  party must produce evidence to support its claim or defense.

9  Id. (citing Cline v. Industrial Maintenance Eng'g. &

10 Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000)).  If the

11 nonmoving party fails to produce enough evidence to create a

12 genuine issue of material fact, the moving party wins the

13 motion for summary judgment.  See Celotex, 477 U.S. at 322.

14 But if the nonmoving party produces enough evidence to create a

15 genuine issue of material fact, the nonmoving party defeats the

16 motion because in order to carry its ultimate burden of

17 persuasion on the motion, the moving party must persuade the

18 court that there is *no* genuine issue of material fact. See High

19 Tech Gays, 895 F.2d at 574.  On summary judgment, the court

20 draws all reasonable factual inferences in favor of the

21 non-movant.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255

22 (1986).

23 **2.   Analysis**

24     **a. Breach of Contract**

25     Plaintiff's breach of contract claim alleges that Daly

26 (and/or Nacio) breached the December Agreement because Daly

27 never obtained additional funding for Nacio; Nacio's shares

28

never became publicly traded; Nacio was never "vended" into a publicly-traded company; and the parties never agreed on terms for a second agreement.  Plaintiff also alleges that Daly and/or Nacio breached the December Agreement by proposing Nacio's Second Amended Plan ("SAP") to the Bankruptcy Court, which contemplated a sale of Nacio's holdings to N2, a new company formed by Daly and Lanham, and which would result in no distribution of cash or new shares being made to Plaintiff as contemplated by the December Agreement.[11]  Plaintiff provides no evidence, however, to support its contention that there is a material issue of disputed fact as to this claim, and I have found none.

Rule 56 makes clear that Plaintiff must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996).  As explained above, the nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  <u>Id.</u>  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  <u>Id.</u>; <u>see also</u>, <u>Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026,

---

[11]     The elements for breach of contract are: (1) the existence of a valid contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to the plaintiff.  <u>McKell v. Washington Mutual, Inc.</u>, 142 Cal. App. 4th 1457, 1489 (2006).

1028-29 (9th Cir. 2001).

Here, Defendants satisfied their initial burden of production by submitting into evidence the December Agreement, which obligated Daly to do three things: (1) withdraw his pending legal action "concerning Encompass, Webber et al" and refrain from re-filing that action; (2) withdraw his objections "to the appointment of a fifth director for the Encompass Board of Directors"; and (3) "administer" the December Agreement and manage the distribution of Nacio shares once Nacio shares became eligible for public trading. (See Miller Decl. Ex. 12.) There is no evidence in the record to suggest that Daly failed to perform any of these actions. While it is undisputed that the Nacio shares never in fact went public, there is nothing in the record to support any argument that Daly had any obligation under the December Agreement to ensure that the shares went public as opposed to simply "managing" those shares "once" they went public, which is what the plain language of the contract suggests.

While Plaintiff throughout its brief asserts that Daly breached the December Agreement by representing that he had (or planned to) obtain funding for Nacio's future operations, but never did so, there is no evidence that Daly had an obligation to obtain funding for Nacio under the terms of the December Agreement. To the extent that Plaintiff is complaining that Daly failed to obtain funding or investment opportunities for Nacio, and had an obligation to do so by virtue of an oral agreement, there is no evidence in the record that Plaintiff

1    and Daly reached any oral agreement.[12]  The only evidence to
2    support Plaintiff's breach of contract claim is the declaration
3    submitted by Scott Webber, who merely states that the
4    representations concerning obtaining funding for Nacio "were a
5    principal reason for why [he] entered into the December
6    Agreement."  (Webber Decl. ¶ 3.)  But this is not a fraudulent
7    inducement claim, and again, there is no evidence to support
8    Plaintiff's naked contention that Daly was obligated to obtain
9    funding for Nacio under the terms of the December Agreement.[13]
10   This is not sufficient for Plaintiff to carry its burden, and
11   Daly is entitled to summary judgment on Plaintiff's first claim
12   for breach of contract.

13        **b. Breach of Covenant of Good Faith & Fair Dealing**

14        Plaintiff next claims that Daly breached the implied
15   covenant of good faith and fair dealing by "knowingly"
16   breaching the December Agreement; claiming that he owned the
17   Shares; claiming that he had the authority to vote the Shares;
18   filing the bankruptcy petition; and filing Nacio's SAP, which

19   _____

20        [12]    Preliminary negotiations or an agreement for future
     negotiations do not amount to an enforceable agreement.  Kruse
21   v. Bank of America, 202 Cal. App. 3d 38 (1988). In order for a
     contract to form, there must be a meeting of the minds with an
     intent to be bound.  Weddington Productions, Inc. v. Flick, 60
22   Cal. App. 4th 793, 811 (1998).

23        [13]    Plaintiff's complaint and its opposition brief
     assert that Daly breached the December Agreement by failing to
24   reach terms for, or execute, a second agreement.  While there
     is evidence in the record that the parties anticipated entering
25   into another agreement (see, e.g., Declaration of Randall
     Lanham at 152:15-153:19), there is nothing in the December
26   Agreement that suggests that Daly was under an obligation to do
     so, and there is no allegation (or evidence) that the parties
27   reached an oral agreement about entering into a further written
     agreement.
28

10

contemplated a sale of Nacio's assets to N2, and if accepted by
the Bankruptcy Court, would have resulted in no distributions
of cash or new shares to Plaintiff.

"The covenant of good faith and fair dealing, implied by
law in every contract, exists merely to prevent one contracting
party from unfairly frustrating the other party's right to
receive the benefits of the agreement actually made." Guz v.
Bechtel National, Inc., 24 Cal. 4th 317, 349 (2000).  The
"implied covenant of good faith and fair dealing is limited to
assuring compliance with the express terms of the contract, and
cannot be extended to create obligations not contemplated by
the contract." Pasadena Live, LLC v. City of Pasadena, 114
Cal. App. 4th 1089, 1093-94 (2004) (citation omitted).  Thus,
the specific contractual obligation from which the implied
covenant of good faith and fair dealing arose must be
identified.  Inter-Mark USA, Inc. v. Intuit, Inc., 2008 WL
552482, 2008 U.S. Dist. LEXIS 18834, at *6 (N.D. Cal. Feb. 27,
2008) (citing Love v. The Mail on Sunday, 2006 WL 4046180, 2006
U.S. Dist. LEXIS 95456, at *7 (C.D. Cal. Aug.15, 2006)).  This
is because "[i]t is universally recognized [that] the scope of
conduct prohibited by the covenant of good faith is
circumscribed by the purposes and express terms of the
contract."  2008 U.S. Dist. LEXIS 18834, [WL] at *7; see also
Lingad v. Indymac Federal Bank, 682 F. Supp. 2d 1142, 1154
(E.D. Cal. 2010).

Again, Plaintiff does little to salvage this claim from
summary adjudication.  Plaintiff has not identified any

11

specific contractual provision allegedly breached by Daly in
support of its breach of contract claim.  Nor has it identified
a specific contractual provision that was frustrated in support
of its claim for breach of the implied covenant of good faith
and fair dealing.  Plaintiff merely asserts that Daly breached
the covenant of good faith and fair dealing implied by the
December Agreement by "knowingly" breaching the December
Agreement, purporting to own the Shares, purporting to have the
authority to vote the Shares, filing the bankruptcy petition on
behalf of Nacio, and filing Nacio's SAP in the Bankruptcy
Court.  But, as stated above, the implied covenant of good
faith and fair dealing cannot be utilized to impose
requirements that do not exist under the terms of the contract.
See Pasadena Live, 114 Cal. App. 4th at 1094 ("'The implied
covenant of good faith and fair dealing is limited to assuring
compliance with the express terms of the contract, and cannot
be extended to create obligations not contemplated by the
contract.'") (citation omitted).  Here, the court cannot find
that the December Agreement impliedly required defendant Daly
to perform any actions other than the three expressly set out
in the Agreement itself, and there is no evidence that Daly
failed to perform those actions in good faith.

Additionally, while Plaintiff argues that Daly breached
the covenant of good faith and fair dealing by "purporting to
own" the Shares and "purporting to have the authority to vote"
the Shares, the only evidence in the record that Daly purported
to own the Shares is his ambiguous deposition testimony, in

1   which he states that he "believed" he owned the Shares or was a

2   "beneficial owner" of the Shares.  (<u>See</u> Second Daly Depo. at

3   159:12-161:25.)  Moreover, there is no evidence in the record

4   to suggest that Daly ever purported to own the Shares or that

5   he exercised a right to vote based on being the owner of the

6   Shares other than in connection with the filing of the

7   bankruptcy petition, and that claim, as explained below, is

8   preempted and absolutely privileged.  (<u>See</u> <u>infra</u> Section 2.e.)

9       Accordingly, Plaintiff has failed to show that there is a

10  genuine issue of material fact as to this claim, and Defendants

11  are therefore entitled to summary judgment on Plaintiff's

12  second claim for breach of the covenant of good faith and fair

13  dealing.

14      **c. Conversion**

15      Under California law, a claim for conversion requires a

16  plaintiff to prove (1) that the plaintiff owns or has a right

17  to possess the property at issue; (2) that the defendant

18  intentionally prevented the plaintiff from having access to the

19  property for a significant period of time, refused to return

20  the property upon plaintiff's demand, or otherwise wrongfully

21  disposed of the property; (3) that the plaintiff did not

22  consent, and (4) damages.  <u>Burlesci v. Petersen</u>, 68 Cal. App.

23  4th 1062, 1066 (1998); <u>Enterprise Leasing Corp. v. Shugart</u>

24  <u>Corp.</u>, 231 Cal. App. 3d 737, 748 (1991); <u>see also</u> <u>Greka</u>

25  <u>Integrated, Inc. v. Lowrey</u>, 133 Cal. App. 4th 1572, 1581 (2005)

26  ("elements of a conversion are the plaintiff's ownership or

27  right to possession of the property at the time of the

28

13

1   conversion; the defendant's conversion by a wrongful act or

2   disposition of property rights; and damages").

3        Here, Plaintiff alleges a claim of conversion against both

4   Daly and Lanham, alleging that neither had a right to continue

5   to exercise or possess dominion or control over the Shares;

6   that Plaintiff voted the Shares to remove Daly and Lanham as

7   directors and/or officers of Nacio, but that Daly and Lanham

8   refused to recognize Plaintiff's rightful exercise of its

9   shareholder rights; that Plaintiff demanded that Daly and

10  Lanham relinquish control over Nacio's assets, and that Daly

11  and Lanham refused; and that as a result, Daly and Lanham

12  improperly diverted Nacio's assets for their personal use and

13  proposed a plan of reorganization in the Chapter 11 proceeding

14  which provided for the sale of the assets of Nacio to an entity

15  owned or controlled by Daly and/or Lanham.

16       As an initial matter, the court notes that the briefing on

17  this claim is woefully insufficient.  Neither party submitted

18  any legal argument or authority to explain to whom the Shares

19  belonged once they were put into Lanham's trust account, which

20  is particularly troubling given that there are no escrow

21  instructions.[14]

22       At the hearing, counsel for Plaintiff clarified that the

23  conversion claim centers on Defendants' refusal to cede control

24  over Nacio even after they were removed as directors in April

25

26       [14]   Likewise, the parties failed to submit any authority
    for what the significance is of the unsigned share certificate.
27  During the hearing, both parties represented to the court that
    neither has seen a signed copy of the certificate, and that
28  none was ever produced in discovery.

2009.   Whether the claim is based on Defendants' refusal to return the Shares or their refusal to cede control of Nacio after April 2009, the claim fails.   Plaintiff submitted evidence that Defendants were not authorized to exercise dominion or control over the Shares because Plaintiff retained all voting rights to the Shares (see Webber Decl. ¶ 5), and that on April 7, 2009, Plaintiff's counsel sent a letter to Defendants demanding that Defendants "immediately cede control of Nacio back to Encompass" and that they "return Encompass' Shares of Nacio being held in trust," but that Lanham and Daly refused to comply with this demand and continued to manage Nacio and its accounts.   (Id. ¶ 6, Ex. 57.)   But Plaintiff failed to submit evidence of what Lanham or Daly did with the Shares once they were put into Lanham's trust that constituted an unlawful exercise of dominion or control over the Shares, other than their potentially purporting to own the Shares in the bankruptcy petition, and that claim is preempted. Moreover, Plaintiff submitted evidence that *it exercised authority* over the Shares by voting to replace Daly and Lanham as directors of Nacio in April 2009.   (Webber Decl. ¶ 6.) Thus, to the extent that Plaintiff did indeed exercise control over the Shares to vote Lanham and Daly off of the Board, it has undercut its own argument that Defendants prevented it from exercising ownership and control over the Shares.   And while there is undisputed evidence that the share certificate, despite Plaintiff's April 7, 2009 demand, is still in Lanham's trust account (Undisputed Fact No. 14), at the hearing, counsel

1   for both parties conceded that because Nacio no longer exists,

2   the share certificate is worthless and therefore any dispute

3   about who still retains it is moot.  Accordingly, because there

4   is no evidence that either Lanham or Daly purported to be

5   owners of the Shares (other than in the bankruptcy petition,

6   and that evidence is ambiguous), or of what Lanham or Daly did

7   after they were removed as directors that constituted unlawful

8   possession or control over Plaintiff's property, or what

9   measure of damages Plaintiff has suffered by any of these

10  actions, Defendants' motion for summary adjudication of

11  Plaintiff's conversion claim must be granted.

12       **d. Negligence, Constructive Fraud & Breach of Fiduciary**

13  **Duty**

14       The court treats the final two claims together, as they

15  appear to be near carbon copies of one another to the extent

16  that they both rest on duties purportedly owed by Daly and

17  Lanham to Plaintiff.[15]

18       Plaintiff argues that Defendants owed it fiduciary duties

19  as directors of Nacio and, as to Lanham, as the "escrow agent"

20  of the Shares, and that Defendants breached their fiduciary

21  duties by refusing to permit Plaintiff to exercise its voting

22  rights, representing that they owned the Shares, and personally

23  representing investors who were attempting to "wrest Nacio from

24  Encompass." (Pl.'s Mot. p. 15.)

25

26       [15]   Constructive fraud consists of any act, omission, or
     concealment involving a breach of legal or equitable duty which
27  results in damages to another even though the conduct is not
     otherwise fraudulent.  Cal. Civ. Code § 1573; <u>Salahutdin v.</u>
28  <u>Valley of Calif., Inc.</u>, 24 Cal. App. 4th 555, 562 (1994).

1    During the hearing, Plaintiff's counsel emphasized that
2  the gravamen of Plaintiff's breach of fiduciary duty claim
3  concerns Defendants' submission of a bid during the bankruptcy
4  (the Second Amended Plan), whereby Defendants attempted to buy
5  Nacio through a company they owned called "N2."  By virtue of
6  submitting this bid, Plaintiff contends, Defendants breached
7  their duties as directors by competing with Plaintiff to
8  acquire Nacio's assets.  As Defendants pointed out during the
9  hearing, this claim fails for a number of reasons.  First,
10  there is evidence in the record that Plaintiff repudiated the
11  December Agreement on June 30, 2008, and that the SAP was not
12  filed until February 18, 2009.  Second, the issue of whether
13  Defendants were in breach of their fiduciary duty as a result
14  of filing the SAP is a claim that is preempted given that it
15  appears to implicate the rights and duties of creditors and
16  debtors under the bankruptcy code because it seeks relief for
17  actions occurring during the bankruptcy.  See Starkle v.
18  Wollrab, Inc., Case No. 09-2887, 2011 U.S. Dist. LEXIS 86861
19  (S.D. Cal., Jan. 27, 2011).  Plaintiff's claim that Defendants
20  filed false declarations with the Bankruptcy Court in which
21  they purported to be 50% owners of the Shares, beyond being
22  preempted, was privileged conduct.  California Civil Code § 47
23  provides an absolute privilege for statements made in the
24  course of a judicial proceeding.  Accordingly, to the extent
25  Plaintiff's claims are based on the allegedly false bankruptcy
26  court declarations, those claims are not actionable.  See
27  Albertson v. Raboff, 46 Cal. 2d 375, 381 (1956); Pollock v.
28

1  <u>University of Southern California</u>, 112 Cal. App. 4th 1416,

2  1430-1431 (2003) (applying § 47 to a declaration filed in a

3  lawsuit).

4      With respect to Plaintiff's contention that Lanham

5  breached a duty to Plaintiff by acting as the attorney for

6  Nacio, Daly and other investors, there is no evidence in the

7  record that Lanham ever acted as Nacio's attorney.  In fact,

8  the only evidence in the record on this point suggests that

9  Lanham was *not* acting as Nacio's attorney, and Lanham denies

10  ever having acted as Nacio's attorney.  (March 14, 2008

11  Deposition of Carey Daly at 32:18-25; Lanham Decl. ¶ 10.)

12  Plaintiff has also produced no evidence that Lanham was acting

13  as legal counsel for Daly or any investors.

14      Finally, with regard to Lanham's role as an escrow agent,

15  there is no evidence that he breached any duty owed to

16  Plaintiff because there is no evidence of what, precisely,

17  Lanham was supposed to do as the escrow agent of the Shares.

18  The December Agreement is silent on this point and neither

19  party submitted any evidence that Lanham was ever given

20  instructions about what to do with the Shares.[16]  Escrow

21

---

22      [16]   In fact, Lanham's declaration states that he never
received any written instructions from the parties to the
23  December Agreement regarding disposition of the Shares, other
than the disposition outlined in the December Agreement itself.
24  (Lanham Decl. ¶ 13.)  In other words, there is no evidence that
Lanham was ever provided, either verbally or in writing, any
25  escrow instructions with respect to how (or when) to distribute
the Shares- merely that he was told to hold the Shares in
26  trust.  Moreover, Lanham is not a party to the December
Agreement.  He is not listed as a party, and he did not sign
27  the Agreement.  His law firm is mentioned in Section II.A. of
the Agreement as the escrow agent, wherein "the parties" agree

28

1 holders owe fiduciary duties to all parties to the escrow,

2 including the duty to strictly comply with the escrow

3 instructions.  <u>Kangarlou v. Progressive Title Co., Inc.</u>, 128

4 Cal. App. 4th 1174, 1179 (2005).  Here, Plaintiff has not

5 submitted any evidence that Lanham, as the escrow holder,

6 failed to meet the requirements of the terms or the escrow, and

7 an escrow agent is under no duty to go beyond the instructions

8 in the escrow.  <u>Lee v. Title Insurance & Trust Company</u>, 264

9 Cal. App.2d 160, 161-162 (1968).

10      Simply put, there is no evidence that either Lanham or

11 Daly failed to exercise reasonable diligence in managing

12 Nacio's corporate affairs, and to the extent that Plaintiff is

13 asserting that Lanham and Daly breached their duties as

14 corporate officers during the bankruptcy proceedings, those

15 claims are not properly before this court.  Accordingly,

16 Defendants are entitled to summary adjudication of Plaintiff's

17 negligence, constructive fraud and breach of fiduciary duty

18 claims.

19      **e. Preemption**

20      Defendants contend that federal bankruptcy law preempts

21 Plaintiff's California state law claims, arguing that the

22 federal court has "exclusive" jurisdiction over bankruptcy

23 liability issues, which is the central focus of this lawsuit.

24 ───────────────────

25 to escrow all documents with the law firm of Randall J. Lanham

26 "for subsequent distribution to the appropriate parties upon
receipt of all documents."  There is no specificity in the

27 Agreement about what those documents are, and none of those
documents appear to have been offered as evidence in the record

28 before the court.

1   (Def.'s Mot. p. 13.) Defendants cite to three Ninth Circuit

2   cases that they claim support their contention that "[a]ll

3   causes of action that 'arise out of the act of preparing,

4   signing, filing, and prosecuting' bankruptcy petitions are

5   preempted by federal bankruptcy law." (Id. (citing Gonzales v.

6   Parks, 830 F.2d 1033 (9th Cir. 1987); MSR Exploration, Ltd. v.

7   Meridian Oil, Inc., 74 F.3d 910 (9th Cir. 1996); and Miles v.

8   Okun (In re Miles), 430 F.3d 1083 (9th Cir. 2005).) Defendants

9   contend that Plaintiff's claims effectively allege abuses of

10  the bankruptcy process—i.e., that Plaintiff is suing Defendants

11  based upon their "participation in the decision to file for

12  bankruptcy and their subsequent prosecution of that bankruptcy"

13  (Def.'s Mot. p. 14), which the Ninth Circuit has expressly

14  precluded.

15      In response, Plaintiff contends that the cases cited by

16  Defendants are distinguishable. (Pl.'s Opp. p. 4-5.)  Plaintiff

17  argues that here, the claims asserted against Defendants do not

18  allege abuse of process or malicious prosecution, as alleged in

19  MSR and Gonzales, and there are no allegations that the Nacio

20  bankruptcy case was filed in bad faith or that any sanctionable

21  conduct occurred during the bankruptcy proceedings as alleged

22  in Miles. (Id.)

23      As an initial matter, the pleadings and papers in this

24  case are poorly drafted and do not always focus or shed light

25  on the primary factual developments concerning the allegations.

26  While it does not appear that Plaintiff is asserting that

27  Nacio's bankruptcy petition was filed in bad faith, to the

28

extent Plaintiff has alleged claims against Nacio or wrongdoing with respect to actions that took place during the bankruptcy, I find those claims are preempted.  See, e.g., MSR Exploration, 74 F.3d 910 (holding that state malicious prosecution actions for events taking place within Bankruptcy Court proceedings are preempted); Gonzales, 830 F.2d 1033 (holding that state courts lack jurisdiction over claim that filing of a bankruptcy petition is an abuse of process); see also, Miles, 430 F.3d at 1091 (holding that 11 U.S.C. § 303(i) provides the exclusive basis for awarding damages based on involuntary bankruptcy petition filing).

However, to the extent Plaintiff seeks relief for actions occurring prior to the bankruptcy that would not impact the rights of creditors or debtors under the Bankruptcy Code, as opposed to actions occurring during the bankruptcy, such claims are not entirely preempted.  See Davis, 481 F.3d at 678 (finding that breach of fiduciary duty claim involving conduct occurring prior to the bankruptcy was not subject to exclusive federal Court jurisdiction). But Plaintiff's claims that Defendants are liable for breach of contract, breach of the implied covenant, conversion, constructive fraud and breach of fiduciary duty for (1) filing the bankruptcy petition; (2) purporting to own the Shares in connection with the filing of the bankruptcy petition; and (3) filing Nacio's Second Amended Plan to the Bankruptcy Court, are preempted.  The claims that are not preempted have been summarily adjudicated against Plaintiff.

1       For the foregoing reasons, it is **ORDERED** that Defendants'

2    motion for summary judgment is **GRANTED.**

3    Dated: October 21, 2011

4    _____

5              Bernard Zimmerman
       United States Magistrate Judge

6

7

8

9

10   G:\BZALL\-BZCASES\ENCOMPASS V. DALY\MSJ DRAFTS\ORDER ON MSJ FINAL as of 3.30.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28